**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LEE HAWKINS,**

      **Petitioner,**

      v.

**WARDEN, ROSS
CORRECTIONAL INSTITUTION,**

      **Respondent.**

      **CASE NO. 2:15-CV-02743
JUDGE JAMES L. GRAHAM
Magistrate Judge Elizabeth P. Deavers**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's *Return of Writ*, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's *Motion for Leave to Conduct Discovery and to Expand Record* (ECF No. 10) is **DENIED**.

**Facts and Procedural History**

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On February 29, 2012, David Ball worked a double-shift at the Kyger Creek Power Plant. After work, Mr. Ball returned to his home and beef cattle farm in Morgan Township, Gallia County, Ohio, around 12:05 A.M. Mr. Ball immediately noticed several occurrences at his residence that were unusual. Most notably, there were signs of a disturbance in his garage including: moved objects, a piece of fabric on the hood of his wife's Subaru vehicle, a shoe under the Subaru, scratches on the hood of the Subaru, and his wife's glasses and cell phone on the passenger seat floorboard of

the Subaru. After a brief search of his property and residence, Mr. Ball realized that his wife, Betsy Ball, was missing.

The Gallia County Sheriff's Office and the Ohio Bureau of Criminal Investigation ("BCI") immediately launched an investigation into the disappearance of Mrs. Ball. A tip from the local community lead law enforcement to a secluded field off an unpaved road in rural Gallia County—an approximate 6 minute drive from the Ball residence—where the deceased body of Mrs. Ball was discovered around noon on March 1, 2012. Mrs. Ball was found naked from the waist down, her shirt and bra had been lifted to expose her breasts, and her legs had been spread apart. Mrs. Ball's face and arms had been bruised and scratched; and ligature furrows were visible around her neck and wrists. A large cut, approximately 1 inch deep extended from hip to hip across Mrs. Ball's abdomen. Mrs. Ball's right wrist was also lacerated, almost severed completely. There were also visible tire tracks across the jaw and upper body of Mrs. Ball, indicating that she had been run over by a vehicle. Finally, her body had been doused in gasoline. It was determined after an autopsy that the primary cause of death was strangulation, and that the manner of death was homicide.

A search of the field revealed several key pieces of evidence. Importantly, there were visible tire tracks extending from the gravel roadway, into the field near where Mrs. Ball was discovered, and then extending back towards the roadway. Investigators were able to determine that the source vehicle had two all-terrain tires on the front of the vehicle, and two "mudder tires" on the rear of the vehicle. Also located near the body was a partial hand towel that appeared to be stained by bodily fluids.

On March 12, 2012, investigators learned that Hawkins owned a Ford F–150 pickup truck with all-terrain tires on the front, and mudder tires on the rear. Hawkins had known the Ball family for 20 years, as he worked as a farmhand on their property. Hawkins also knew that Danny Ball was working a double-shift on February 29, 2012, and would not be returning home until late in the evening. Hawkins agreed to make a voluntary statement to law enforcement and initially denied knowing anything about the disappearance and murder of Mrs. Ball. Upon further questioning, however, Hawkins made several contradictory remarks. For instance, Hawkins at one point indicated that he witnessed but did not participate in the offense. Then, Hawkins stated that he was forced by a third person to put Mrs. Ball in his truck and help dispose of the body.

Scientific analysis of several pieces of evidence linked Hawkins to both crime scenes. For instance, Hawkins's fingerprints were found on several areas of the Subaru in the Ball's garage. Moreover, it was determined that the partial hand towel found in the field contained a mixture of Hawkins's semen and Mrs. Ball's blood. A swab of Mrs. Ball's vagina also revealed the presence of Hawkins's semen.

On March 15, 2012, Hawkins was indicted by a grand jury on one count of aggravated murder, in violation of R.C. 2903.01(A), a special category felony; one count of murder, in violation of R.C. 2903.02(A), a special category felony; one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; and one count of abuse of a corpse, in violation of R.C. 2927.01(B), a felony of the fifth degree. Hawkins pled not guilty to all counts; and the trial court heard pre-trial arguments on the admissibility of certain evidence. The case ultimately proceeded to a jury trial; and Hawkins was found guilty of aggravated murder, tampering with evidence, and abuse of a corpse. The trial court sentenced Hawkins to life in prison without the possibility of parole for the aggravated murder conviction, and to 36 months in prison for the tampering with evidence conviction. It was further ordered that the sentences be served consecutively, and that Hawkins pay the costs of prosecution. This matter is now before this Court on delayed appeal.

On appeal, Hawkins asserts the following assignments of error:

First Assignment of Error:

The trial court abused its discretion when it sentenced Lee Hawkins to life without parole. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution. Tr. 1130–1136.

Second Assignment of Error:

Lee Hawkins was deprived of his constitutional right to the effective assistance of counsel. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution. Tr. 1125–1126.

3

*State v. Hawkins*, No. 13CA3, 2014 WL 1339804, at *1-3 (Ohio App. 4th Dist. March 21, 2014)(footnotes omitted).  On March 21, 2014, the appellate court affirmed the judgment of the trial court.  *Id*.  Petitioner did not file an appeal with the Ohio Supreme Court.

On June 17, 2014, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  (ECF No. 9-1, PageID# 184.)  Petitioner asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that he had been denied the effective assistance of trial counsel based on his attorney's failure to object to the presentation of cumulative prejudicial evidence.  (PageID# 193.)  On September 11, 2014, the appellate court denied the Rule 26(B) application.  (PageID# 190.)  On December 24, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (PageID# 210.)

On September 9, 2015, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to object to the needless presentation of cumulative prejudicial evidence, *i.e*., gruesome details and photographs of the decedent's body (claim one); and that he was denied the effective assistance of appellate counsel based on his attorney's failure to raise the issue on appeal (claim two).  It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## Motion for Leave to Conduct Discovery and to Expand the Record

Petitioner moves the Court to order Respondent to provide a copy of all photographs submitted into evidence at trial in support of his claim of the denial of the effective assistance of counsel.  He contends that, absent admission of this unduly prejudicial evidence, he would have been acquitted.

4

The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply to habeas corpus proceedings. Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is . . . entitled to relief. . . .'" *Bracy v. Gramley,* 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson,* 394 U.S. 286, 300 (1969)); *see also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

> "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford*, 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

*Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir. 2004).

Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts provides:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
>
> (b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

> (c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rule 7 permits federal habeas corpus courts to direct the parties to supplement the state court record with materials relevant to the Court's resolution of the petition. The decision of whether to order Rule 7 expansion is within the sound discretion of the district court. *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988) (holding that record expansion is left to discretion of the district court). Expansion pursuant to Rule 7, under the language of that Rule, therefore contains only a relevancy limitation. That is, the materials a petitioner seeks to include need only be relevant to the determination of the merits of the constitutional claims in order to be added to the record.

Here, Respondent maintains that Petitioner has waived his claim of ineffective assistance of trial counsel by failing to raise the claim on direct appeal. Review of the photographs at issue, therefore, will not assist this Court in determining whether Petitioner has committed a procedural default. Further, expansion of the record to include such evidence likewise is not relevant to this Court's determination of whether Petitioner has established cause for his procedural default. Petitioner has failed to establish either good cause for this discovery request or that the information sought will be relevant to this Court's resolution of this case.

Petitioner's Petitioner's *Motion for Leave to Conduct Discovery and to Expand Record* (ECF No. 10) therefore is **DENIED**.

## Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those

claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*. "Cause" under this test "must be

7

something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id.* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc*, 456 U.S. 107, 135 (1892)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir.2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

In claim one, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to admission of prejudicial photographs of the victim. This claim, being readily apparent from the face of the record, should have been raised on direct appeal, where Petitioner was represented by new counsel. However, Petitioner failed to raise the claim on direct appeal.[1] Further, Petitioner may now no longer present this claim to the state courts by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982);

---

[1] Petitioner's claim of ineffective assistance of counsel was limited to his assertion that his attorney was ineffective because he failed to move for a waiver of court costs. *See State v. Hawkins*, 2014 WL 1339804, at *5.

8

*State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F. Supp. 2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence

prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still secure review of his claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule."
> *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)).

The Court presumes that Petitioner asserts, as cause for his procedural default of claim one, the denial of the effective assistance of appellate counsel. He raises this same allegation in habeas corpus claim two. This Court therefore will address the merits of this claim in order to determine whether Petitioner can establish cause for his procedural default.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has

experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that statecourt decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a

11

> different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) (" '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in

evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). Strickland requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis,* 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness." *Poole v. MacLaren*, No. 12–1705, ––– F. App'x –––, 2013 WL 6284355, at *5 (6th Cir. Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland,* 466 U.S. at 687).  To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Poole*, 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir.2009) (quoting *Strickland,* 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger*

> *v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* citing *Wilson.* . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ( "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?
>
> (2) Was there arguably contrary authority on the omitted issues?
>
> (3) Were the omitted issues clearly stronger than those presented?
>
> (4) Were the omitted issues objected to at trial?
>
> (5) Were the trial court's rulings subject to deference on appeal?
>
> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> (7) What was appellate counsel's level of experience and expertise?
>
> (8) Did the petitioner and appellate counsel meet and go over possible issues?
>
> (9) Is there evidence that counsel reviewed all the facts?
>
> (10) Were the omitted issues dealt with in other assignments of error?
>
> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (citations omitted).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court observed that while "'[s]urmounting *Strickland* 's high bar is never . . . easy.' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult. . . ." *Id*. (quoting *Padilla v. Kentucky*, 559 U.S. 356, ——, 130 S.Ct. 1473, 1485 (2010) (and citing *Strickland*, 466 U.S. at 689). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The state appellate court rejected Petitioner's claim of the denial of the effective assistance of appellate counsel in relevant part as follows:

> Appellant, Lee A. Hawkins, filed a pro se application to reopen his direct appeal pursuant to App.R. 26(B). . . . For the following reasons, we find that Hawkins has failed to demonstrate a genuine issue that he was deprived of the effective assistance of appellate counsel. Accordingly, we deny his application to reopen his direct appeal.
>
> . . .
>
> Hawkins was indicted on one count of aggravated murder, one count of murder, one count of tampering with evidence, and one count of abuse of a corpse. The charges stemmed from allegations that Hawkins murdered Betsy Ball and then mutilated her body. Following trial, a jury found Hawkins guilty of aggravated murder, tampering with evidence, and abuse of a corpse. The trial court sentenced Hawkins to life in prison without the possibility of parole for the aggravated murder conviction, and to 36 months in

prison for the tampering with evidence conviction. [FN2] It was further ordered that the sentences be served consecutively, and that Hawkins pay the costs of prosecution.

FN2: The trial court found that the tampering with evidence conviction and the abuse of a corpse conviction were allied offenses of similar import, and the state elected to proceed to sentencing on the tampering with evidence conviction.

In his direct appeal, Hawkins, through counsel, argued that the trial court erred by sentencing him to life without parole on the aggravated murder conviction. Hawkins also argued that he received ineffective assistance from his trial counsel, because his trial counsel failed to move for the waiver of court costs at his sentencing hearing.

App. R. 26(B)(1) permits a defendant in a criminal case to apply for reopening of his or her appeal from the judgment of conviction and sentence, due to a claim of ineffective assistance of appellate counsel. The application must set forth "[o]ne or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation[.]" App.R. 26(B)(2)(c). The application "shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App. R. 26(B)(5).

"The standard to be employed in reviewing an ineffective assistance of appellate counsel claim is the same one used when considering such a claim made with respect to trial counsel." *State v. Trego*, 4th Dist. Ross No. 04CA2763, 2004-Ohio-7287, ¶ 5. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687. . . (1984). . . . "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." . . . . "The failure to make such a showing precludes an applicant from prevailing on his [or her] application." *Trego* at ¶ 5.

"An appellate attorney has wide latitude and the discretion to decide which issues and arguments will prove most useful on

appeal.  Furthermore, appellate counsel is not required to argue assignments of error that are meritless." (Citations omitted.) *State v. Sullivan*, 10th Dist. Franklin No. 11AP-414, 2014 Ohio-673, ¶ 7.

In his application to reopen, Hawkins contends that his appellate counsel was ineffective because he failed to raise the following assignment of error in his direct appeal:

Assignment of Error:

Appellate suffered ineffective (sic) counsel at trial, where trial counsel failed to properly register objections to the needless presentation of cumulative (sic) evidence, violating the Sixth Amendment, U.S. Constitution, Evid.R. 403, and Fourteenth Amendment, denying a fair trial.

In support of his proposed assignment of error, Hawkins contends that his trial counsel was ineffective because she failed to object to "gruesome, cumulative, repetitive and inflammatory evidences," which were allegedly elicited from all of the State's expert witnesses.  Hawkins also argues that numerous photographs depicting "gruesome details" were presented to the jury without objection from his trial counsel.  In short, Hawkins contends that the evidence in question confused the jury; was so prejudicial as to violate Evid. R. 403; deprived him of due process; and deprived him of a fair trial.  Thus, Hawkins contends that his trial counsel was ineffective for failing to object to the presentation of the evidence.  Hawkins further argues that his appellate counsel was ineffective for failing [to] raise this argument on his direct appeal.

Hawkins, however, has failed to establish that the outcome of his trial would have been different had trial counsel objected to the so-called "gruesome, cumulative, repetitive and inflammatory evidences."  First of all, Hawkins has neither cited nor attached the portions of the record on which he relies.  See App.R. 26(B)(2)(e).  Rather, Hawkins makes the vague assertion that it "is manifestly clear by reviewing the trial transcripts, from beginning to end, repeated and unnecessary, gruesome details were described by expert witnesses for the [S]tate."  Thus, we do not even know the specific details that Hawkins alleges are prejudicial, or where the repeated testimony of these details can be found in the record. "The mere recitation of a proposed assignment of error is not sufficient to meet [Hawkins's] burden of proving that his appellate counsel was deficient and that there is a reasonable probability that he would have been successful if appellate counsel presented the

17

> proposed assignment of error for review." *State v. Tabasso*, 8th Dist. Cuyahoga No. 98248, 2013-Ohio-3721, ¶ 16.
>
> In regards to the photographs, we note that under Evid.R. 403 and 611(A), the admission of photographic evidence is left to the discretion of the trial court. *State v. Nguyen*, 4th Dist. Athens No. 12CA14, 2013-Ohio-3170, ¶ 59. We further note that photographs depicting the type and number of wounds suffered by a victim can carry significant probative weight to overcome any potential prejudice. *State v. Moore*, 81 Ohio St.3d 22, 32. . . (1998): *State v. Allen,* 73 Ohio St.3d 626, 636. . . (1995). The Ohio Supreme Court has determined that photographs depicting the victim's body that included blood and brain matter were not particularly gruesome and thus were admissible. *State v. Watson*, 61 Ohio St.3d 1, 7. . . (1991), abrogated on other grounds by *State v. McGuire*, 80 Ohio St.3d 390. . . (1997). Plus, even if photographs of the same area of the body merely shot from different angles would be unnecessarily repetitious, they do not necessarily constitute reversible prejudice. *State v. Davis*, 62 Ohio St.3d 326, 348. . . (1991). Finally, the evidence in this case is such that, even if the photographs were not admitted, we still could not say that the result of the proceedings would have been different. Therefore, we find that appellate counsel was not ineffective in failing to raise the issue on direct appeal.
>
> In sum, we find that no genuine issue exists that Hawkins was deprived of the effective assistance of appellate counsel. Put another way, we believe that a reasonable probability does not exist that the results of the proceedings would have been different even had appellate counsel raised the issue Hawkins has presented in this application. Therefore, we deny Hawkins's application to reopen his appeal. APPLICATION DENIED.

*Entry Denying Application to Reopen Direct Appeal* (ECF No. 9-1, PageID# 190-95.) Thus, the state appellate court found that Petitioner had failed to identify any inadmissible evidence presented at trial. Petitioner therefore has failed to establish the denial of the effective assistance of appellate counsel. He likewise has failed to establish cause for his procedural default of claim one.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

18

Petitioner's *Motion for Leave to Conduct Discovery and to Expand Record* (ECF No. 10) is **DENIED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge
